1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

AREA 55, INC., a California Corporation, and VINTURI, INC., a California Corporation,

12

13

Plaintiffs and Counterdefendants,

14

vs.

15

16

CELERAS LLC, a California Limited Liability Company; PANDAMERICAN LLC, a California Limited Liability Company; FRANMARA INC., a California Corporation; MARCO POLO TRADING COMPANY LLC, a California Limited Liability Company; and PANDAMERICAN TRADING GROUP, LTD.,

17

18

19

20

21

Defendants and Counterclaimants.

22

CASE NO. 09-CV-2755-H (NLS)

**TENTATIVE CLAIM CONSTRUCTION ORDER FOR UNITED STATES PATENT NUMBER 7,614,614 AND PATENT NUMBER 7,841,584**

23

24

25

26

27

28

On April 1, 2011, the parties submitted their opening claim construction briefs. (Doc. Nos. 117, 118.) On April 18, 2011, the parties submitted their responsive claim construction briefs. (Doc. Nos. 129, 130.) After due consideration of the parties' briefing, the Court issues the following tentative claim construction order.

## Claim Construction – Legal Standard

The "bedrock principle" of patent law is that the "claims of a patent define the

08cv2234

invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005).  In construing claim terms, a court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing.  Phillips, 415 F.3d at 1313.

The baseline for the analysis in claim construction is the "ordinary and customary meaning" of the claim term.  Phillips, 415 F.3d at 1312-13.  However, the "ordinary and customary meaning" phrase itself has a specialized meaning in patent law.  It is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention. Id. at 1313.  That person having ordinary skill in the art is deemed "to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  Id.  If the meaning of a term is not readily apparent, the court must then look to other intrinsic evidence to define the term.  See id. at 1314.

A court must read claims "in view of the specification, of which they are a part." Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995).  The specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  A court may also look beyond the patent and consult the prosecution history, if in evidence, during claim construction.  Phillips, 415 F.3d at 1317.  The patent and its prosecution history "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention."  V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310 (Fed. Cir. 2005).  In addition to intrinsic evidence, a court may also consider pertinent extrinsic evidence.  Phillips, 415 F.3d at 1317.

The patent claims should generally be construed to encompass the preferred embodiments described in the specification, and it is often error to adopt a construction that does not include them.  See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1138 (Fed. Cir. 2004).  However, a court must not import limitations from the specifications into the claim.  Phillips, 415 F.3d at 1323 ("[A]lthough the specification often

describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); see also Agfa Corp. v. Creo Prods., Inc., 451 F.3d 1366, 1367-77 (Fed. Cir. 2006); Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1306-07 (Fed. Cir. 2006). Further, "the fact that the specification describes only a single embodiment, standing alone, is insufficient to limit otherwise broad claim language." Howmedia Osteonics Corp. v. Wright Med. Tech., Inc., 540 F.3d 1337, 1345 (Fed. Cir. 2008).

When a patent contains multiple claims, the doctrine of "claim differentiation" provides that "each claim in a patent is presumptively different in scope." RF Del., Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1263 (Fed. Cir. 2003). The doctrine is based on a commonplace notion that patentees use different words or phrases in different claims to indicate that the claims have different meanings. Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

"[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of the prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317. The doctrine of prosecution disclaimer is well established and precludes "patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003). For prosecution history disclaimer to apply there must be "a clear and unmistakable disavowal of scope during prosecution." Purdue Pharma L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006). There is no such "clear and unmistakable" disavowal if the statements are subject to "more than one reasonable interpretation." SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1287 (Fed. Cir. 2005); see also Omega, 334 F.3d at 1324 (stating that the doctrine does not apply "where the alleged disavowal of claim scope is ambiguous").

The Court reviews each claim and considered each construction in light of the applicable standards of law. The Court has given the appropriate weight to the intrinsic evidence and, where appropriate, has declined to import limitations from the specifications.

1         The Court construes the claim terms in dispute as indicated in the boxes in the charts

2    below.  The Court further incorporates the notes as explanations of its constructions.

3

4    IT IS SO ORDERED.

5    DATED:  May 6, 2011

6

7                                                 MARILYN L. HUFF, District Judge

8                                               UNITED STATES DISTRICT COURT

- 4 -

08cv2234

# CLAIM CONSTRUCTION CHART FOR PATENT 7,614,614 ("'614 Patent")

## CLAIM 17

(language for which the parties submitted proposed construction in **bold**)

A method of aerating wine, the method comprising:

disposing a **venturi apparatus** in vertical alignment with a receptacle such that a **liquid flow path** of the apparatus is substantially vertically aligned;

pouring wine from a bottle, the wine flowing vertically downward due to gravity, through an opening in a top of the **venturi apparatus** exposed to the atmosphere into a reservoir of the **venturi apparatus** at a beginning of the **liquid flow path**, the wine being subject to **about atmospheric pressure** in the reservoir;

continuing to dispose the apparatus such that the wine flows vertically downward from the reservoir;

**decreasing pressure of the wine** in a vicinity of an **air intake**;

drawing air through the **air intake** due to the **pressure decrease**;

mixing the wine with the air drawn through the air intake to form aerated wine; and

continuing to dispose the apparatus in vertical alignment with the receptacle such that the aerated wine flows from the apparatus into the receptacle.

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "venturi apparatus" | tubular structure that is constricted in the middle and flared on both ends | an apparatus containing a plurality of sections defining a **liquid flow path** (as defined below) as well as an **air intake** (as defined below) | a fitting or tubular structure, and in particular a pipe structure, that is constricted in the middle and flared at both ends<br><br>[COMMENT – The patentees acted as their own lexicographers and defined this term in the specification.  See Note 1 below.] |
| "liquid flow path" | Construction Unnecessary<br><br>{a sequential path or passageway through which a fluid is caused to flow} | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections consisting of a first funnel section, first cylindrical section, an intermediate passageway having a ceiling with a diameter greater than the first cylindrical section located immediately above, a second cylindrical section, and a second funnel section | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections containing at least an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - There was a clear and unmistakable disavowal of claim scope during the prosecution of the '614 patent importing the limitation of an intermediate passageway to overcome the prior art.  See Note 2 below.] |
| "about atmospheric pressure" | approximately atmospheric pressure | approximately atmospheric pressure | approximately atmospheric pressure<br><br>[COMMENT - The parties agree on this construction.] |

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "decreasing pressure of the wine" | Construction Unnecessary<br><br>{reducing the pressure of the wine} | a reduction in pressure of the wine caused by flowing from the first cylindrical section into the intermediate passageway having a ceiling with a greater diameter than the first cylindrical section immediately above | reducing the pressure of the wine by flowing into the intermediate passageway from the previous section<br><br>[COMMENT - The language in the specification and the prosecution disclaimer state that the reduction of pressure occurs as the first fluid, here wine, enters the intermediate passageway.  See Note 3 below.] |
| "air intake" | Construction Unnecessary<br><br>{an opening through which air enters} | At least one sidearm passageway fluidly connected to the intermediate passageway section of the liquid flow path. | an opening through which air enters<br><br>[COMMENT - Defendant's construction seeks to import limitations from the specification.  See Note 4 below.] |
| "pressure decrease" | Construction Unnecessary<br><br>{reduction in pressure} | a reduction in pressure of the wine caused by flowing from the first cylindrical section into the intermediate passageway having a ceiling with a greater diameter than the first cylindrical section immediately above | a reduction in pressure of the wine caused by flowing into the intermediate passageway from the previous section<br><br>[COMMENT - The Court construes this term consistent with the previous term, "decreasing pressure of the wine."  See Note 3 below.] |

**NOTE 1**:

Plaintiffs argue that the specification of the '614 patent contains an express definition of the term "venturi apparatus."  (Doc. No. 117 at 9-10.)  "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning  it would otherwise possess."  Phillips, 415 F.3d at 1316.  "A patentee may act as its own lexicographer and assign to a term a unique definition that is different from its ordinary and customary meaning; however, a patentee must clearly express that intent in the written description."  Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed. Cir. 2008).

The '614 patent states in its written description: "Venturi-type devices are well-known in the art.  Generally, such devices comprise fittings or tubular structures, and in particular pipe structures, that are constricted in the middle and flared at both ends."  U.S. Patent 7,614,614 col. 1 ll. 18-21 (filed Feb. 15, 2006).  This language shows a clear intent to define the term "venturi apparatus," and the Court construes the term to give it the express definition that is provided in the specification.

Defendant argues that the term should be given the additional limitations of "containing a plurality of sections defining a **liquid flow path** as well as **an air intake**."  (Doc. No. 110 at 2-7.)  It is unnecessary to add these limitations to this term given that claim 17 already contains the terms "liquid flow path" and "air intake,"

and these claim terms will be given their own constructions.  See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1119 (stating that "all claims terms are presumed to have meaning" and that claims terms should not be rendered "unnecessary and superfluous").

**NOTE 2:**

Defendant argues that during prosecution, the patentees expressly limited the claim scope of the '614 patent and the term "liquid flow path" to overcome a prior art rejection.  (Doc. No. 118 at 7-9.)  Plaintiffs argue that Defendant is attempting to improperly import limitations from the preferred embodiment to the claims.  (Doc. No. 117 at 12-14.)

The doctrine of prosecution disclaimer precludes "patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." Omega, 334 F.3d at 1323.  "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.  This may occur, for example, when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art."  Purdue Pharma, 438 F.3d at 1136.  However, the doctrine does not apply "where the alleged disavowal of claim scope is ambiguous."  Omega, 334 F.3d at 1234.

On October 13, 2008, the United States Patent and Trademark Office ("USPTO") issued an Office Action and rejected the patentees' patent application for the '614 patent in its entirety as either anticipated or obvious in light of certain prior art, Yamamoto and Kamelmacher.  (Doc. Nos. 119-121, Declaration of Scott J. Allen ("Allen Decl.") Ex. A at 83-90.)  In response to this Office Action, the patentees amended the claims in the application and provided the following arguments to the USPTO:

By this amendment, Applicants have more clearly defined the subject matter which they regard as the invention, and further, have more clearly distinguished the present invention over the cited references.  In this regard, independent Claim 1 and new independent claim 15, from which all remaining claims depend, include an intermediate passageway defining a compartment having a ceiling, floor and midsection and further that the ceiling of the intermediate passageway is fluidly coupled to and has a diameter larger than the first cylindrical section.  Such structure results in a fluid flow path that operatively causes fluid passing therethrough to experience a decrease in pressure. . . .

Such structure is completely lacking in cited references.

(Id. at 103-04 (emphasis in original).)  The patentees further stated:  "Neither Yamamoto nor Kamelmacher include Applicant's novel intermediate passageway design." (Id. at 106.)

The Court concludes that these statements in the prosecution history represent a clear and unmistakable disavowal of claim scope.  Facing a rejection by the examiner due to anticipation and obviousness, the patentees argued that the above structural limitation of an intermediate passageway defined their invention and was what made their invention novel over the prior art.  Accordingly, the patentees clearly and unmistakably disavowed any claim interpretation that would not require the structural limitation of an intermediate passageway to be part of the claim term "liquid flow path."

The Court's conclusion that the term "liquid flow path" requires the limitation of an intermediate passageway is further supported by the specification and the remainder of the prosecution history.  The specification explains that the problem with the prior art was that because conventional venturi devices have a tapered portion, it reduces the area in which a second fluid could mix with the first fluid and precludes the two fluids from mixing.  '614 Patent col. 1 ll. 37-50.  The specification states that the invention solves this problem by having an intermediate passageway that causes the first fluid to "experience a slight decrease in pressure, contrary to conventional venturi design."  Id. col. 2 ll. 31-34.  The second fluid is then introduced at this point of reduced pressure in the intermediate passageway, facilitating optimal flow dynamics.  See id. col. 2 ll. 35-50.  In addition, in his reasons for allowance, the USPTO examiner mentioned the importance of the intermediate passageway in making the invention novel over the prior art.  (Doc. Nos. 119-21, Allen Decl. Ex. A at 185.)  The examiner stated:

[T]he prior art of record fails to disclose or suggest a process for aerating wine or an apparatus for contacting a liquid with a gas that requires a vertically aligned venturi apparatus that is open to atmosphere, such that the liquid, in particular wine, which is poured into the open top end of the

device under goes a reduction in pressure during passage through the device, in particular an intermediate passageway of greater cross-sectional area than the upstream portion of the flow path, so as to draw gas, in particular air into the device in the area of reduced pressure.

(Id.)

The Court also concludes that there is not a meaningful difference between the term "liquid flow path"–used in the claim language–and the term "fluid flow path–used in the prosecution history disclaimer. The patent defines the term "fluid" in the specification as "any type of liquid or gas." '614 Patent col. 3 ll. 39-42; see Halmsderfer, 527 F.3d at 1381 ("patentee may act as its own lexicographer"). Accordingly, the term "liquid" is contained in the definition of the term "fluid," and the limitations related to the term "fluid flow path" should also, therefore, be contained in the term "liquid flow path."

Plaintiffs argue that the disclaimer was not a clear disavowal because the only independent claims in the patent at the time of the amendment were the claims that ultimately issued as unasserted claims 1 and 12, not asserted claim 17–the present claim. (Doc. No. 129. at 7-10.) However, "arguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary." Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir. 1995); accord. ERBE Elektromedizin GmbH v. Canady Tech. LLC, 629 F.3d 1278, 1286-87 (Fed. Cir. 2010). Accordingly, the patentees' statements regarding the term "fluid flow path" apply equally to claim 17 and the term "liquid flow path" even though it was not part of the application at the time of the statements. See id.

Plaintiffs also argue that the doctrine of claim differentiation prevents the addition of the proposed structural limitations because those limitations are expressly described in other claims in addition to the term "fluid/liquid flow path." (Doc. No. 117 at 15-17.) Plaintiffs argue that this would render that claim language superfluous. (Id.) However, the doctrine of claim differentiation only creates a "presumption that each claim in a patent has a different scope." Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006). Further, this presumption will not overcome a clear prosecution history disclaimer made by the patentee. See ERBE, 629 F.3d at 1286-87; see also Curtiss-Wright, 438 F.3d at 1381 ("claim differentiation 'can not broaden claims beyond their correct scope.'").

Although the Court agrees with Defendant that there was a disavowal of claim scope during the prosecution of the '614 patent, the disavowal was not as broad as the construction Defendants propose. Defendants proposed construction requires a five section structure consisting of a first funnel section, a first cylindrical section, an intermediate passageway, a second cylindrical section, and a second funnel section. (Doc. No. 110 at 2-3.) The prosecution history disclaimer only related to one of these sections, the intermediate passageway. (Doc. Nos. 119-21, Allen Decl. Ex. A at 103.) The disclaimer does not even mention a five part structure or first and second funnel sections. (See id.) Further, although the disclaimer does mention cylindrical sections, it only does so only in passing when describing the intermediate passageway. (See id.) That statement is at best ambiguous about the importance of the cylindrical sections and does not constitute a clear and unmistakable disavowal of claim scope. See Purdue Pharma, 438 F.3d at 1136; Omega, 334 F.3d at 1323-24.

The five section structure that Defendant argues for is only contained in the specification as a preferred embodiment of the invention. See '614 Patent col. 2 ll. 12-57. The specification even expressly uses the term preferred embodiment. Id. at col. 2 ll. 17 ("According to the preferred embodiment, . . . ."). A court must not import limitations from the specification, in particular preferred embodiments, into the claims. See Phillips, 415 F.3d at 1323. That the five part structure is the only embodiment described in the specification does not change the Court's analysis because "'even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.'" Martek Biosciences Corp v. Nutrinova, Inc., 579 F.3d 1363, 1381 (Fed. Cir. 2009) (quoting Innova/Pure Water, 381 F.3d at 1117). Here, there is no clear intention to limit the claim scope to Defendant's five section structure. To the contrary, the specification states that it is a preferred embodiment and later states that:

08cv2234

Additional modifications and improvements of the present invention may also be apparent to those of ordinary skill in the art.  Thus, the particular combination of parts and steps described and illustrated herein is intended to represent only certain embodiments of the present invention, and is not intended to serve as limitations of alternative devices and methods within the spirit and scope of the invention.

'614 Patent col. 6 ll. 1-7.  Accordingly, the Court declines to adopt a construction of the term "liquid flow path" that requires Defendant's five section structural limitations other than the structural limitation of an intermediate passageway as disclaimed by the patentees during the prosecution history.

**NOTE 3**:

The prosecution disclaimer previously mentioned in the last note clearly and unmistakably states that the reduction in pressure occurs due to the structure of the intermediate passageway.  (Doc. Nos. 119-21, Allen Decl. Ex. A at 103.)  This is also supported by the specification, which states that the invention solves the problems of the prior art by having an intermediate passageway that causes the first fluid to "experience a slight decrease in pressure, contrary to conventional venturi design."  '614 Patent, col. 2 ll. 31-34.  In addition, the USPTO examiner in his reasons for allowance stated that the reduction in pressure occurred due to the intermediate passageway.  (Doc. Nos. 119-21, Allen Decl. Ex. A at 185.)  Accordingly, the Court construes this claim to require that the reduction in pressure occurs when the first fluid, here wine, enters the intermediate passageway.

**NOTE 4**:

Defendant's proposed construction seeks to import a limitation from the specification into the claim.  The limitation of "at least one sidearm passageway fluidly connected to the intermediate passageway" is only found in the specification in describing a preferred embodiment of the invention.  See '614 Patent col. 2 ll. 35-50, col. 4 ll. 20-36.  In construing the claims, the Court will not import limitations from preferred embodiments found in the specification into the claims.  See Phillips, 415 F.3d at 1323; see also Martek, 579 F.3d at 1381.  Accordingly, the Court declines to adopt Defendant's proposed construction.

However, the Court disagrees with Plaintiffs' contention that the term "air intake" does not require any construction.  (Doc. No. 110 at 8.)  The term "air intake" is not a commonly understood phrase with a widely accepted meaning.  See Phillips, 415 F.3d at 1314.  Accordingly, the Court adopts Plaintiff's alternative proposed construction.

## CLAIM 18

(language for which the parties submitted proposed construction in **bold**)


The method of claim 17 wherein **decreasing the pressure of the wine** occurs vertically above the **air intake**.

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "decreasing pressure of the wine" | Construction Unnecessary<br><br>{reducing the pressure of the wine} | a reduction in pressure of the wine caused by flowing from the first cylindrical section into the intermediate passageway having a ceiling with a greater diameter than the first cylindrical section immediately above | reducing the pressure of the wine by flowing into the intermediate passageway from the previous section<br><br>[COMMENT - The Court construes this term consistent with its construction in claim 17 of the '614 patent.  See Note 5 below.] |
| "air intake" | Construction Unnecessary<br><br>{an opening through which air enters} | At least one sidearm passageway fluidly connected to the intermediate passageway section of the liquid flow path. | an opening through which air enters<br><br>[COMMENT - The Court construes this term consistent with its construction in claim 17 of the '614 patent.  See Note 5 below.] |

**NOTE 5**:

"[C]laim terms are normally used consistently throughout the patent."  Phillips, 415 F.3d at 1314.  Further, the parties agree that these terms should be given the same previous construction.  (Doc. No. 110.)

**CLAIM CONSTRUCTION CHART FOR PATENT 7,841,584 ("'584 Patent")**

**CLAIM 1**

(language for which the parties submitted proposed construction in **bold**)

An apparatus configured to aerate wine, the apparatus comprising:

a body providing a **fluid flow path** through the body such that wine can pass downward through the body;

the **fluid flow path** being defined by: a **fluid-receiving portion** configured to be open to and in fluid communication with the atmosphere to receive the wine as the wine is poured, the **fluid-receiving portion** defining at least a first cross-sectional area;

a **reduced area portion** disposed downstream from and in fluid communication with the fluid-receiving portion, the reduced-area portion defining a second cross-sectional area that is smaller than the first cross-sectional area of the fluid-receiving portion;

an **air inlet** extending between the fluid flow path and a side of the body, fluidly coupling the atmosphere with the **fluid flow path**;

an **increased-area portion** disposed in a vicinity of the air inlet, the **increased-area portion** defining a third cross-sectional area that is greater than the second cross-sectional area.

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "fluid flow path" | Construction Unnecessary<br><br>{a sequential path or passageway through which a fluid is caused to flow} | a plurality of connected sections forming a sequential path or passageway for fluid to flow, said sections consisting of a **first funnel section, first cylindrical section,** an **intermediate passageway,** a **second cylindrical section,** and a **second funnel section**<br><br><br>**First funnel section:** a funnel-type opening at the beginning of the fluid flow path.<br><br><br>**First cylindrical section:** a generally straight, cylindrical passageway.<br><br><br>**Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section.<br><br><br>**Second cylindrical section:** a second generally straight | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections containing at least an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this claim consistent with Claim 17 of the '614 Patent.  See Note 6 below.] |

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| | | cylindrical passageway.<br><br>**Second funnel section:** a second funnel-type opening at the end of the fluid flow path allowing the fluid to exit the apparatus. | |
| "fluid receiving portion" | Construction Unnecessary<br><br>{a portion of the fluid flow path that receives fluid} | **First funnel section:** a funnel-type opening at the beginning of the fluid flow path. | a portion of the fluid flow path that receives fluid<br><br>[COMMENT - Defendant's construction seeks to import limitations from the specification.  See Note 7 below.] |
| "reduced area portion" | Construction Unnecessary<br><br>{a second cross-sectional area that is smaller than the first cross-sectional area of the fluid-receiving portion} | **First cylindrical section:** a generally straight, cylindrical passageway. | a second cross-sectional area that is smaller than the first cross-sectional area of the fluid-receiving portion<br><br>[COMMENT - Defendant's construction seeks to import limitations from the specification.  See Note 7 below.] |
| "air inlet" | Construction Unnecessary<br><br>{an opening through which air enters} | a side-arm passageway. | an opening through which air enters<br><br>[COMMENT - Defendant's construction seeks to import limitations from the specification.  See Note 7 below.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "increased area portion" | Construction Unnecessary<br><br>{a third cross-sectional area that is greater than the second cross-sectional area} | **Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section. | an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court's construction is consistent with the language of the claim, the specification, and the prosecution disclaimer.  See Note 8 below.] |

**NOTE 6**:

As stated previously, during the prosecution history of the '614 patent's application, there was a clear and unmistakable disavowal of the claim scope by the patentees with respect to the claim term "fluid flow path."  (Doc. Nos. 119-21, Allen Decl. Ex. A at 103-07.)  Plaintiffs argue that prosecution disclaimer should not apply to the Court's construction of the '584 patent because its claims were not part of the application at the time the disclaimer was made.  (Doc. No. 129 at 8.)

"'[P]rosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications.'" Omega, 334 F.3d at 1333; see also Ormco, 498 F.3d at 1314.  "When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation." Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999).  The '584 patent is a continuation of the application that issued as the '614 patent, (Doc. No. 117 at 4), and the '584 patent contains the same claim limitation of a "fluid flow path" that is contained in the '614 patent. Compare '584 Patent col. 6 ll. 22 with '614 Patent col. 6. ll. 41.  In addition, because the '584 patent's specification is nearly identical to the '614 patent's specification, the Court's construction of the term "fluid flow path" is also supported by the '584 patent's specification. See '584 Patent col. 1 ll. 35-65, col. 2 ll. 25-48.  Accordingly, the Court applies the prosecution disclaimer from the '614 patent's application with equal force to the '584 patent. See Elkay, 192 F.3d at 980.

**NOTE 7**:

Defendant's proposed constructions of the terms "fluid-receiving portion," "reduced-area portion," and "air inlet" seek to import limitations from the specification into the claim.  The limitations of a "first funnel section," a "first cylindrical section," and a "side-arm passageway" are only found in the specification in describing a preferred embodiment of the invention. See '584 Patent col. 2 ll. 10-48, col. 3 ll. 49-col. 5 ll. 28.  In construing the claims, the Court will not import limitations from preferred embodiments found in the specification into the claims. See Phillips, 415 F.3d at 1323; see also Martek, 579 F.3d at 1381.  Accordingly, the Court declines to adopt Defendant's proposed constructions.

However, the Court disagrees with Plaintiffs' contention that these terms do not require any construction.  (Doc. No. 110 at 17-20.)  The terms "fluid-receiving portion," "reduced-area portion," and "air inlet" are not commonly understood phrases with widely accepted meanings. See Phillips, 415 F.3d at 1314.  Accordingly, the Court adopts Plaintiff's alternative proposed constructions.

**NOTE 8**:

  The prosecution disclaimer made by the patentees during the prosecution of the '614 patent's application clearly requires that the fluid flow path possess an "intermediate passageway." (Doc. Nos. 119-21, Allen Decl. Ex. A at 103-07.)  This conclusion is also supported by the language in the specification of the '584 patent. <u>See</u> '584 Patent col. 1 ll. 35-65, col. 2 ll. 25-48.  In addition, the language of claim 1 and the specification show that this "intermediate passageway" would be the "increased-area portion" of claim 1.  <u>Compare</u> <u>id.</u> col. 2 ll. 26-29 ("intermediate cylindrical passageway that is configured and dimensioned to be larger in diameter than the first cylindrical section"); <u>id.</u> col. 2 ll. 45-46 ("sidearm passageways introducing one or more additional fluids will interconnect with the intermediate passageway") <u>with</u> <u>id.</u> col. 6 ll. 37-40 ("an increased-area portion disposed in a vicinity of the air inlet, the increased-area portion defining a third cross-sectional area that is greater than the second cross-sectional area").

**CLAIM 3**

(language for which the parties submitted proposed construction in **bold**)

The apparatus of claim 1 wherein the **increased-area portion** is **configured and disposed such that air is drawn from the atmosphere** through the air inlet into the **fluid flow path** as the wine passes through the **fluid flow path**.

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "increased area portion" | Construction Unnecessary<br><br>{a third cross-sectional area that is greater than the second cross-sectional area} | **Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section. | an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this term consistent with its construction in claim 1 of the '584 patent.  See Note 5 above.] |
| "configured and disposed such that air is drawn from the atmosphere " | Construction Unnecessary<br><br>{the arrangement of the increased-area portion causes air to be drawn in from the atmosphere} | the flow of liquid from the first cylindrical section into the intermediate passageway results in a **pressure differential** (defined below).  As a result of said pressure differential, air is drawn from the atmosphere into the intermediate chamber | the arrangement of the intermediate passageway causes air to be drawn in from the atmosphere due to a reduction in pressure of the wine caused by the intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The language in the prosecution disclaimer and the specification supports the Court's construction.  See Note 9 below. |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "fluid flow path" | Construction Unnecessary<br><br>{a sequential path or passageway through which a fluid is caused to flow} | a plurality of connected sections forming a sequential path or passageway for fluid to flow, said sections consisting of a **first funnel section, first cylindrical section,** an **intermediate passageway,** a **second cylindrical section,** and a **second funnel section.**<br><br>**First funnel section:** a funnel-type opening at the beginning of the fluid flow path.<br><br>**First cylindrical section:** a generally straight, cylindrical passageway.<br><br>**Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section.<br><br>**Second cylindrical section:** a second generally straight | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections containing at least an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this claim consistent with Claim 17 of the '614 Patent.  See Note 6 above.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| | | cylindrical passageway.<br><br>**Second funnel section:** a second funnel-type opening at the end of the fluid flow path allowing the fluid to exit the apparatus. | |

**NOTE 9**:

    The prosecution disclaimer made by the patentees during the prosecution of the '614 patent's application states that the structure of the intermediate passageway causes the first fluid, here wine, "to experience a decrease in pressure."  (Doc. Nos. 119-21, Allen Decl. Ex. A at 103.)  The specification of the '584 patent further explains that this decreased pressure in the first fluid creates a vacuum that draws in the second fluid, here air.  See '584 Patent col. 1 ll. 16-48, col. 2 ll. 25-48, col. 4 ll. 20-48.

08cv2234

## CLAIM 11

(language for which the parties submitted proposed construction in **bold**)

A method of aerating wine, the method comprising:

disposing a **venturi apparatus** higher than and in relation to a wine receptacle such that a **fluid flow path** provided by the apparatus is disposed to direct wine exiting from the **venturi apparatus** into the receptacle;

pouring wine from a bottle, the wine flowing downward due to gravity, through an opening provided by the venturi apparatus exposed to the atmosphere into a **wine-receiving portion** of the flow path, the wine being subject to atmospheric pressure in the wine-receiving portion;

continuing to dispose the apparatus such that wine flows downward from the wine-receiving portion along the **fluid flow path**;

producing a **pressure differential** between the fluid flow path and the atmosphere in a vicinity of an air intake of the apparatus; drawing air through the air intake due to the pressure differential;

mixing the wine with the air drawn through the air intake to form aerated wine;

and continuing to dispose the apparatus higher than and in relation to the receptacle such that the aerated wine flows from the apparatus into the receptacle.

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "venturi apparatus" | tubular structure that is constricted in the middle and flared on both ends | an apparatus containing a plurality of sections defining a **liquid flow path** (as defined below) as well as an **air inlet** (as defined below) | a fitting or tubular structure, and in particular a pipe structure, that is constricted in the middle and flared at both ends<br><br>[COMMENT – The patentees acted as their own lexicographers and defined this term in the specification.  See '584 Patent col. 1 ll. 16-19; see also Note 1 above.] |
| "fluid flow path" | Construction Unnecessary<br><br>{a sequential path or passageway through which a fluid is caused to flow} | a plurality of connected sections forming a sequential path or passageway for fluid to flow, said sections consisting of a **first funnel section, first cylindrical section,** an **intermediate passageway,** a **second cylindrical section,** and a **second funnel section.**<br><br>**First funnel section:** a funnel-type opening at the beginning of the fluid flow path.<br><br>**First cylindrical section:** a generally straight, cylindrical passageway. | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections containing at least an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this claim consistent with Claim 17 of the '614 Patent.  See Note 6 above.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| | | **Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section.<br><br>**Second cylindrical section:** a second generally straight cylindrical passageway.<br><br>**Second funnel section:** a second funnel-type opening at the end of the fluid flow path allowing the fluid to exit the apparatus. | |
| "wine-receiving portion" | Construction Unnecessary<br><br>{a portion of the fluid flow path that receives wine} | **First funnel section:** a funnel-type opening at the beginning of the fluid flow path. | a portion of the fluid flow path that receives wine<br><br>[COMMENT- Defendant's construction seeks to import limitations from the specification.  See Note 10 below.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "pressure differential" | Construction Unnecessary<br><br>{a difference in pressure} | a reduction in pressure of the liquid relative to the atmosphere as the liquid flows from the **first cylindrical section** (defined above) into the **intermediate passageway** (defined above) caused by the fact that the intermediate passageway has a substantially larger diameter than the diameter of the first cylindrical section. | a difference in pressure due to a reduction in pressure of the wine caused by the intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The language in the specification and the prosecution disclaimer supports the Court's construction.  See Note 11 below.] |

**NOTE 10**:

   Defendant's proposed construction seeks to import a limitation from the specification into the claim.  The limitation of a "first funnel section" is only found in the specification in describing a preferred embodiment of the invention.  See '584 Patent col. 2 ll. 17-22, col. 3 ll. 64-col. 4 ll. 4.  In construing the claims, the Court will not import limitations from preferred embodiments found in the specification into the claims.  See Phillips, 415 F.3d at 1323; see also Martek, 579 F.3d at 1381.  Accordingly, the Court declines to adopt Defendant's proposed construction.

   However, the Court disagrees with Plaintiffs' contention that the term "wine-receiving portion" does not require any construction.  (Doc. No. 110 at 28.)  The term "wine-receiving portion" is not a commonly understood phrase with a widely accepted meaning.  See Phillips, 415 F.3d at 1314.  Accordingly, the Court adopts Plaintiff's alternative proposed construction.

**NOTE 11**:

   The prosecution disclaimer made by the patentees during the prosecution of the '614 patent's application states that the structure of the intermediate passageway causes the first fluid, here wine, "to experience a decrease in pressure."  (Doc. Nos. 119-21, Allen Decl. Ex. A at 103.)  The specification of the '584 patent further explains that this decreased pressure in the first fluid causes the pressure differential between it and the second fluid.  See '584 Patent col. 1 ll. 16-48, col. 2 ll. 25-48, col. 4 ll. 20-48.

## CLAIM 12

(language for which the parties submitted proposed construction in **bold**)

An apparatus for facilitating the mixture of a liquid and a gas, the apparatus comprising:

**a fluid receiving section** configured to be open to and in fluid communication with the atmosphere to receive the liquid due to the liquid being poured, the fluid receiving section **defining a narrowing passageway**;

an **intermediate passageway** fluidly coupled with the fluid receiving section to receive the liquid from the fluid receiving section;

an **exit passageway** fluidly coupled to the intermediate passageway, the intermediate passageway being located between the fluid receiving section and the exit passageway;

and at least one **side passageway** fluidly coupled to the intermediate passageway and configured to allow the gas to be drawn into the intermediate passageway to mix with the liquid;

wherein: the fluid receiving section, the intermediate passageway and the exit passageway are disposed to define a **fluid flow path** for the poured liquid, and the fluid flow path between the fluid receiving section and the exit passageway causes the liquid passing therethrough to experience a **decreased pressure** to draw the gas through the at least one side passageway when the liquid passes therethrough at the decreased pressure.

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "a fluid receiving section" | Construction Unnecessary<br><br>{a portion of the fluid flow path that receives fluid} | **First funnel section:** a funnel-type opening at the beginning of the fluid flow path. | a portion of the fluid flow path that receives fluid<br><br>[COMMENT - The parties agree that the term "fluid-receiving section" should have the same construction as the term "fluid receiving portion" found in claim 1 of the '584 patent.] |
| "defining a narrow passageway" | Construction Unnecessary<br><br>{defining a passageway that narrows} | the first cylindrical section is narrower in diameter than the opening at the beginning of the first funnel section | defining a passageway that narrows<br><br>[COMMENT- Defendant's construction seeks to import limitations from the specification.  See Note 12 below.] |
| "intermediate passageway" | Construction Unnecessary<br><br>{a passageway between the fluid receiving section and the exit passageway} | a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section | an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this term consistent with the definition of "intermediate passageway" that has previously been given in its constructions of the terms "fluid flow path" and "increased-area portion" in claim 1 of the '584 patent.  See Note 5 above.] |
| "exit passageway" | Construction Unnecessary<br><br>{passageway through which the fluid exits the apparatus} | a portion of the fluid flow path consisting, sequentially of the "second cylindrical section" and the "second funnel section," both of which are defined above. | passageway through which the fluid exits the apparatus<br><br>[COMMENT- Defendant's construction seeks to import limitations from the specification.  See Note 12 below.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "side passageway" | Construction Unnecessary | At least one sidearm passageway fluidly connected to the intermediate passageway section of the liquid flow path. | side passageway<br><br>[COMMENT- Defendant's construction seeks to import limitations from the specification.  See Note 12 below.] |
| "fluid flow path" | Construction Unnecessary<br><br>{a sequential path or passageway through which a fluid is caused to flow} | a plurality of connected sections forming a sequential path or passageway for fluid to flow, said sections consisting of a **first funnel section, first cylindrical section,** an **intermediate passageway,** a **second cylindrical section,** and a **second funnel section.**<br><br>**First funnel section:** a funnel-type opening at the beginning of the fluid flow path.<br><br>**First cylindrical section:** a generally straight, cylindrical passageway. | a plurality of connected sections forming a sequential path or passageway for liquid to flow, said sections containing at least an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this claim consistent with Claim 17 of the '614 Patent.  See Note 6 above.] |

08cv2234

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| | | **Intermediate passageway:** a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section.<br><br>**Second cylindrical section:** a second generally straight cylindrical passageway.<br><br>**Second funnel section:** a second funnel-type opening at the end of the fluid flow path allowing the fluid to exit the apparatus. | |
| "decreased pressure" | Construction Unnecessary<br><br>{reduced pressure} | a reduction in pressure of the liquid relative to the atmosphere as the liquid flows from the **first cylindrical section** (defined above) into the **intermediate passageway** (defined above) caused by the fact that the intermediate passageway has a substantially larger diameter than the diameter of the first cylindrical section | a reduction in pressure of the liquid caused by flowing into the intermediate passageway from the previous section<br><br>[COMMENT - The Court construes this term consistent with its construction of the term "pressure decrease" found in claim 17 of the '614 patent.  See Note 6 above.] |

08cv2234

**NOTE 12**:

Defendant's proposed constructions seek to import limitations from the specification into the claim. The limitations of a "first funnel section," a "first cylindrical section," a "second cylindrical section," a "second funnel section," and a "sidearm passage" can only be found in the specification in describing a preferred embodiment of the invention. See '584 Patent col. 2 ll. 10-55, col. 3 ll. 49-col. 5 ll. 18. In construing the claims, the Court will not import limitations from preferred embodiments found in the specification into the claims. See Phillips, 415 F.3d at 1323; see also Martek, 579 F.3d at 1381. Accordingly, the Court declines to adopt Defendant's proposed constructions.

However, the Court disagrees with Plaintiffs' contention that the term "exit passageway" does not require any construction. (Doc. No. 110 at 17-20.) The term "exit passageway" is a not commonly understood phrase with a widely accepted meaning. See Phillips, 415 F.3d at 1314. Accordingly, the Court adopts Plaintiff's alternative proposed constructions.

## CLAIM 16

(language for which the parties submitted proposed construction in **bold**)


The apparatus of claim 15 wherein an aperture between the fluid receiving section and the intermediate passageway is circular and **a diameter of the intermediate passageway is greater than a diameter of the aperture**.


| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "a diameter of the intermediate passageway is greater than a diameter of the aperture" | Construction Unnecessary | the diameter of the intermediate passageway is substantially greater than the diameter of the first cylindrical section | the diameter of the intermediate passageway is greater than the diameter of the aperture<br><br>[COMMENT - Defendant's construction seeks to import limitations from the specification.  See Note 13 below.] |

**NOTE 13**:

     Defendant's proposed construction seeks to import limitations from the specification into the claim.  The limitation of the diameter being "substantially" greater than the aperture and the limitation of a "first cylindrical section" are only found in the specification in describing a preferred embodiment of the invention.  See '584 Patent col. 2 ll. 22-24, col. 4 ll. 5-19, col. 4 ll. 25.  In construing the claims, the Court will not import limitations from preferred embodiments found in the specification into the claims.  See Phillips, 415 F.3d at 1323; see also Martek, 579 F.3d at 1381.  Accordingly, the Court declines to adopt Defendant's proposed construction.

**CLAIM 17**

(language for which the parties submitted proposed construction in **bold**)


The apparatus of claim 12 further comprising a **first cylindrical section** fluidly coupling the **fluid receiving section** and the **intermediate passageway**.

| Claim Language | Plaintiffs Area 55/Vinturi's Construction | Defendant Franmara's Construction | Court's Construction |
|---|---|---|---|
| "first cylindrical section" | Construction Unnecessary | a generally straight, cylindrical passageway | first cylindrical section<br><br>[COMMENT - The term "first cylindrical section" uses commonly understood words with widely accepted meanings, and, therefore, no construction is necessary.  See Phillips, 415 F.3d at 1314.] |
| "fluid receiving section" | Construction Unnecessary<br><br>{a portion of the fluid flow path that receives fluid} | **First funnel section:** a funnel-type opening at the beginning of the fluid flow path. | a portion of the fluid flow path that receives fluid<br><br>[COMMENT - The Court construes this term consistent with its construction in claim 12 of the '584 patent.  See note 5 above.] |
| "intermediate passageway" | Construction Unnecessary<br><br>{a passageway between the fluid receiving section and the exit passageway} | a compartment having a ceiling, floor and midsection, said compartment being fluidly coupled to the first cylindrical section, the diameter of said compartment being substantially larger than the diameter than the first cylindrical section | an intermediate passageway having a ceiling with a diameter greater than the section located immediately above<br><br>[COMMENT - The Court construes this term consistent with its construction in claim 12 of the '584 patent.  See note 5 above.] |

08cv2234